E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
KATHRYNNE N. SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorney
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0631
    Facsimile: (213) 894-0141
    E-mail:    kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 8:23-100-CJC |
| Plaintiff, | <u>PLEA AGREEMENT FOR DEFENDANT CHANCE BRANNON</u> |
| v. | |
| CHANCE BRANNON, TIBET ERGUL, and XAVIER BATTEN, | |
| Defendants. | |

    1.    This constitutes the plea agreement between CHANCE BRANNON ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

    2.    Defendant agrees to:

    a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one through

four of the indictment in <u>United States v. Chance Brannon et al.</u>, No.
CR 8:23-100-CJC, which charges defendant with conspiracy to
maliciously destroy property by fire and explosive, in violation of
18 U.S.C. § 844(n); malicious destruction of property by fire and
explosive, in violation of 18 U.S.C. § 844(i); possession of an
unauthorized destructive device, in violation of 18 U.S.C. § 5861(d);
and intentional damage to a reproductive health services facility, in
violation of 18 U.S.C. § 248(a)(3).

     b.   Not contest facts agreed to in this agreement.

     c.   Abide by all agreements regarding sentencing contained
in this agreement.

     d.   Appear for all court appearances, surrender as ordered
for service of sentence, obey all conditions of any bond, and obey
any other ongoing court order in this matter.

     e.   Not commit any crime; however, offenses that would be
excluded for sentencing purposes under United States Sentencing
Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
within the scope of this agreement.

     f.   Be truthful at all times with the United States
Probation and Pretrial Services Office and the Court.

     g.   Pay the applicable special assessments at or before
the time of sentencing unless defendant has demonstrated a lack of
ability to pay such assessments.

     h.   Defendant agrees that any and all criminal debt
ordered by the Court will be due in full and immediately.  The
government is not precluded from pursuing, in excess of any payment
schedule set by the Court, any and all available remedies by which to

1    satisfy defendant's payment of the full financial obligation,

2    including referral to the Treasury Offset Program.

3            i.    Complete the Financial Disclosure Statement on a form

4    provided by the USAO and, within 30 days of defendant's entry of a

5    guilty plea, deliver the signed and dated statement, along with all

6    of the documents requested therein, to the USAO by either email at

7    usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

8    Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

9    Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

10   criminal debt shall be assessed based on the completed Financial

11   Disclosure Statement and all required supporting documents, as well

12   as other relevant information relating to ability to pay.

13           j.    Authorize the USAO to obtain a credit report upon

14   returning a signed copy of this plea agreement.

15           k.    Consent to the USAO inspecting and copying all of

16   defendant's financial documents and financial information held by the

17   United States Probation and Pretrial Services Office.

18           l.    The imposition of the following conditions of

19   probation or supervised release:

20               i.    The defendant shall submit defendant's person and

21   any property under defendant's control, including any residence,

22   vehicle, papers, computer and other electronic communication or data

23   storage devices and media, and effects, to suspicion-less search and

24   seizure at any time of the day or night by any law enforcement or

25   probation officer, with or without a warrant, and with or without

26   cause; and if stopped or questioned by a law enforcement officer for

27   any reason, defendant shall notify that officer that defendant is on

28   federal supervised release and subject to search.

1           ii.    The defendant shall not contact or visit any

2    Planned Parenthood or other reproductive healthcare facility, or any

3    employees, staff, or patients thereof, without prior written approval

4    from the United States Probation Office.

5    THE USAO'S OBLIGATIONS

6       3.    The USAO agrees to:

7          a.    Not contest facts agreed to in this agreement.

8          b.    Abide by all agreements regarding sentencing contained

9    in this agreement.

10          c.    At the time of sentencing, provided that defendant

11    demonstrates an acceptance of responsibility for the offenses up to

12    and including the time of sentencing, recommend a two-level reduction

13    in the applicable Sentencing Guidelines offense level, pursuant to

14    U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

15    additional one-level reduction if available under that section.

16          d.    Not further criminally prosecute defendant for

17    violations of 18 U.S.C. § 1366, 26 U.S.C. § 5861, or 18 U.S.C. § 922

18    arising out of defendant's conduct described in the agreed-to factual

19    basis set forth in paragraph 18 below.  Defendant understands that

20    the USAO is free to criminally prosecute defendant for any other

21    unlawful past conduct or any unlawful conduct that occurs after the

22    date of this agreement.  Defendant agrees that at the time of

23    sentencing the Court may consider the uncharged conduct in

24    determining the applicable Sentencing Guidelines range, the propriety

25    and extent of any departure from that range, and the sentence to be

26    imposed after consideration of the Sentencing Guidelines and all

27    other relevant factors under 18 U.S.C. § 3553(a).

28

1

## NATURE OF THE OFFENSES

2      4.   Defendant understands that for defendant to be guilty of
3  the crime charged in count one, that is, conspiracy to maliciously
4  destroy property by fire and explosive, in violation of Title 18,
5  United States Code, Section 844(n), the following must be true:

6           a.   There was an agreement between two or more persons to
7  maliciously destroy property by fire and explosive; and

8           b.   Defendant became a member of the conspiracy knowing of
9  at least one of its objects and intending to help accomplish it.

10      5.   Defendant understands that for defendant to be guilty of
11  the crime charged in count two, that is, malicious destruction of
12  property by fire and explosive, in violation of Title 18, United
13  States Code, Section 844(i), the following must be true:

14           a.   Defendant maliciously damaged or destroyed a building
15  or real property, meaning that he acted intentionally or with willful
16  disregard of the likelihood that damage would result from his acts;

17           b.   Defendant did so using fire or an explosive; and

18           c.   The building or real property was used in interstate
19  commerce or in an activity affecting interstate commerce.

20      The term "explosive" includes an incendiary device, such as a
21  Molotov cocktail.

22      To act with "willful disregard" means that defendant was
23  subjectively aware of the risk his actions would damage or destroy
24  the property and took the actions nonetheless.

25      A building is used in interstate commerce if it was actively
26  employed for a commercial purpose or for a function that involved or
27  affected interstate commerce.

28

6.    Defendant understands that for defendant to be guilty of the crime charged in count three, that is, possession of an unregistered destructive device, in violation of Title 26, United States Code, Section 5861(d), the following must be true:

a.    Defendant knowingly possessed a destructive device;

b.    Defendant was aware the destructive device was an explosive or incendiary device, which is designed for use as a weapon; and

c.    Defendant had not registered the destructive device with the National Firearms Registration and Transfer Record.

7.    Defendant understands that for defendant to be guilty of the crime charged in count four, that is, intentional damage to a reproductive health services facility, in violation of Title 18, United States Code, Section 248(a)(3), the following must be true:

a.    Defendant intentionally damaged or destroyed the property of a facility;

b.    The facility provided reproductive health services; and

c.    Defendant acted because the facility provided reproductive health services.

Reproductive health services means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling, or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy.

## PENALTIES AND RESTITUTION

8.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States

6

Code, Section 844(n), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 844(i), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 5861(d), is: 10 years' imprisonment, a three-year period of supervised release; a fine of $10,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 248(a)(3), is: 12 months' imprisonment, a one-year period of supervised release; a fine of $100,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $25.

12.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 51 years' imprisonment; a three-year period of supervised release; a fine of $610,000, or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $325.

13.  Defendant understands that the statutory mandatory minimum sentence that the Court must impose for violations of Title 18, United States Code, Sections 844(i) and 844(n) is five years' imprisonment and a mandatory special assessment of $100.

14.  Defendant understands that defendant will be required to pay full restitution to the victim of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result of any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty.  The parties currently believe that the applicable amount of restitution is approximately $1,000 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

15.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

16.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

17.    Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty

9

1   regardless of any immigration consequences that his pleas may entail,
2   even if the consequence is automatic removal from the United States.

3   FACTUAL BASIS

4       18.   Defendant admits that defendant is, in fact, guilty of the
5   offenses to which defendant is agreeing to plead guilty.  Defendant
6   and the USAO agree to the statement of facts provided below and agree
7   that this statement of facts is sufficient to support pleas of guilty
8   to the charges described in this agreement and to establish the
9   Sentencing Guidelines factors set forth in paragraph 20 below but is
10  not meant to be a complete recitation of all facts relevant to the
11  underlying criminal conduct or all facts known to either party that
12  relate to that conduct.

13      Beginning around February 2022, and continuing through at least
14  March 13, 2022, within Orange County and elsewhere, defendant, who
15  was then an active-duty United States Marine, and his codefendants,
16  Tibet Ergul ("Ergul") and Xavier Batten ("Batten"), conspired and
17  agreed to use an explosive and destructive device, namely, a Molotov
18  cocktail, to damage or destroy a commercial property used in an
19  activity affecting interstate commerce.  Defendant became a member of
20  the conspiracy knowing its objective and intending to help accomplish
21  that objective.  Defendant considered various targets, including the
22  Anti-Defamation League in San Diego, California.  Ultimately,
23  defendant chose to target a Planned Parenthood, a clinic open to the
24  public which provides reproductive health services, including
25  services related to pregnancies and the termination of pregnancies,
26  such as abortions.  Defendant chose to target Planned Parenthood
27  because he wanted to make a statement against abortion, scare
28  pregnant women away from obtaining abortions, deter doctors, staff,

1 and employees of the clinic from providing abortions, intimidate and
2 interfere with the patients of the clinic, and encourage others to
3 engage in similar acts of protest.

4     On or about March 12, 2022, in Ergul's garage in Orange County,
5 California, defendant and Ergul put together a Molotov cocktail,
6 which they knew was a destructive device.  Batten, who was in Florida
7 at the time, advised defendant as to how to build the Molotov
8 cocktail.  Defendant, Ergul, or Batten did not register the Molotov
9 cocktail with the National Firearms Registration and Transfer record.

10     In the early morning of March 13, 2022, disguised in dark
11 clothing, hoods, masks, and gloves, defendant and Ergul drove to the
12 vicinity of a Planned Parenthood in Orange County, California.
13 Defendant and Ergul approached the entrance of the Planned
14 Parenthood, ignited the Molotov cocktail, and threw it at the clinic
15 entrance, intentionally starting a fire.  Defendant and Ergul then
16 fled.  Within minutes of throwing the Molotov cocktail, defendant
17 texted Batten to tell him that their plan had been successful.

18     Defendant, Ergul, and Batten intentionally and successfully
19 damaged the clinic, which was forced to close temporarily and
20 reschedule approximately 30 patients' appointments.  At all times
21 defendant acted because the facility was providing reproductive
22 health services.  The facility's provision of reproductive health
23 services was an activity that affected interstate commerce.

24     Two months later, in May 2022, Batten consulted defendant about
25 what measures Batten could take if he wanted to "get away with"
26 destroying another clinic that provides reproductive health services.
27 Defendant advised Batten to use various protective measures to avoid
28 detection, including to put his phone in airplane mode, plan "quick

escape routes," avoid being identified on camera, and obscure his
face and skin color.

In June 2022, following the Supreme Court's decision in Dobbs v.
Jackson Women's Health Organization, in which the Court overturned
Roe v. Wade, defendant and Ergul planned to use a second Molotov
cocktail, which they had in their possession and did not register
with the National Firearms Registration and Transfer record, to
damage or destroy a second Planned Parenthood clinic.  Defendant and
Ergul did not follow through with their plan because they saw law
enforcement near the clinic they planned to target.

Beginning sometime in 2022 and continuing through approximately
the time of their arrest, defendant and Ergul also discussed starting
a race war by attacking an electrical substation with the goal of
damaging the substation and disrupting the functioning of the power
grid in Orange County.  On a thumb drive disguised as a military-
style dog tag necklace bearing "Semper Fidelis," the motto for the
Marines, defendant kept a .txt file titled "Delete after reading."
The file contained an operation plan and gear list for targeting a
Southern California Edison substation.  Defendant possessed several
of the items on the gear list, including but not limited to a Zastava
ZPap M70 rifle with a handwritten Cyrillic message on the folding
stock which roughly translates to "Total N*gger Death."  The thumb
drive also contained recordings of the 2019 Christchurch Mosque
Shooting, a mass shooting in which a white supremacist murdered 51
people and injured 40 others.

Throughout the early summer of 2023, defendant and Ergul also
discussed and researched how to attack the parking lot or electrical
room of Dodger Stadium on a night celebrating LGBTQ pride, including

12

by using a remote-detonated device.  As part of those conversations, defendant shared a "WW2 sabotage manual" with Ergul and discussed doing "dry runs" to "case" the stadium.  Defendant also conducted research on Ted Kaczynski.  Defendant and Ergul were arrested two days before Pride Night.

Beginning on an unknown date and continuing through June 14, 2023, defendant possessed (1) a SilencerCo, model Osprey 45K, .45 ACP caliber firearm silencer, bearing serial number OSP 45K-2729; (2) a SilencerCo, model Saker 556 ASR, 5.56mm caliber firearm silencer, bearing serial number SKA 556-1532; and (3) an unmarked 7.62mm caliber short-barreled rifle with no visible serial number. Defendant knew the silencers were devices for silencing, muffling, or diminishing the report of a portable firearm.  Defendant knew the short-barreled rifle had a barrel of less than 16 inches in length. Defendant had not registered the silencers or the short-barreled rifle with the National Firearms Registration and Transfer Record.

<u>SENTENCING FACTORS</u>

19.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

appropriate between the mandatory minimum and up to the maximum set
by statute for the crimes of conviction.

20.    Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

Base Offense Level:              24        U.S.S.G. § 2K1.4(a)(1)
Defendant and the USAO reserve the right to argue that additional
specific offense characteristics, adjustments, and departures under
the Sentencing Guidelines are appropriate.  Defendant understands
that the Court must sentence defendant to a minimum term of 60
months' imprisonment on counts one and two.

21.    Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

22.    Defendant and the USAO reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing
Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
(a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

23.    Defendant understands that by pleading guilty, defendant
gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if
necessary have the Court appoint counsel -- at trial.  Defendant
understands, however, that, defendant retains the right to be
represented by counsel -- and if necessary have the Court appoint
counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

24.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

25.    Provided that all portions of the sentence are at or below the statutory maximum specified above, defendant gives up the right to appeal all of the following: (a) the procedures and calculations

15

1  used to determine and impose any portion of the sentence; (b) the

2  term of imprisonment imposed by the Court, including, to the extent

3  permitted by law, the constitutionality or legality of defendant's

4  sentence, provided it is within the statutory maximum; (c) the fine

5  imposed by the Court, provided it is within the statutory maximum;

6  (d) the amount and terms of any restitution order, provided it

7  requires payment of no more than $1,000; (e) the term of probation or

8  supervised release imposed by the Court, provided it is within the

9  statutory maximum; and (f) any of the following conditions of

10 probation or supervised release imposed by the Court: the conditions

11 set forth in Second Amended General Order 20-04 of this Court; the

12 drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and

13 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C.

14 § 3563(b)(7); and any conditions of probation or supervised release

15 agreed to by defendant in paragraph 2 above.

16      26.  Defendant also gives up any right to bring a post-

17 conviction collateral attack on the convictions or sentence,

18 including any order of restitution, except a post-conviction

19 collateral attack based on a claim of ineffective assistance of

20 counsel, a claim of newly discovered evidence, or an explicitly

21 retroactive change in the applicable Sentencing Guidelines,

22 sentencing statutes, or statutes of conviction.  Defendant

23 understands that this waiver includes, but is not limited to,

24 arguments that the statutes to which defendant is pleading guilty are

25 unconstitutional, and any and all claims that the statement of facts

26 provided herein is insufficient to support defendant's pleas of

27 guilty.

28

27.  The USAO agrees that, provided all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $1,000.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

28.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

29.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the

1  entire plea agreement and vacate defendant's guilty pleas on any
2  remaining counts of conviction, with both the USAO and defendant
3  being released from all their obligations under this agreement, or
4  (c) leave defendant's remaining convictions, sentence, and plea
5  agreement intact.  Defendant agrees that the choice among these three
6  options rests in the exclusive discretion of the USAO.

7                    EFFECTIVE DATE OF AGREEMENT

8       30.  This agreement is effective upon signature and execution of
9  all required certifications by defendant, defendant's counsel, and an
10 Assistant United States Attorney.

11                      BREACH OF AGREEMENT

12      31.  Defendant agrees that if defendant, at any time after the
13 signature of this agreement and execution of all required
14 certifications by defendant, defendant's counsel, and an Assistant
15 United States Attorney, knowingly violates or fails to perform any of
16 defendant's obligations under this agreement ("a breach"), the USAO
17 may declare this agreement breached.  All of defendant's obligations
18 are material, a single breach of this agreement is sufficient for the
19 USAO to declare a breach, and defendant shall not be deemed to have
20 cured a breach without the express agreement of the USAO in writing.
21 If the USAO declares this agreement breached, and the Court finds
22 such a breach to have occurred, then: (a) if defendant has previously
23 entered guilty pleas pursuant to this agreement, defendant will not
24 be able to withdraw the guilty pleas, and (b) the USAO will be
25 relieved of all its obligations under this agreement.

26      32.  Following the Court's finding of a knowing breach of this
27 agreement by defendant, should the USAO choose to pursue any charge

28

                                  18

1    that was either dismissed or not filed as a result of this agreement,

2    then:

3           a.    Defendant agrees that any applicable statute of

4    limitations is tolled between the date of defendant's signing of this

5    agreement and the filing commencing any such action.

6           b.    Defendant waives and gives up all defenses based on

7    the statute of limitations, any claim of pre-indictment delay, or any

8    speedy trial claim with respect to any such action, except to the

9    extent that such defenses existed as of the date of defendant's

10   signing this agreement.

11          c.    Defendant agrees that: (i) any statements made by

12   defendant, under oath, at the guilty plea hearing (if such a hearing

13   occurred prior to the breach); (ii) the agreed to factual basis

14   statement in this agreement; and (iii) any evidence derived from such

15   statements, shall be admissible against defendant in any such action

16   against defendant, and defendant waives and gives up any claim under

17   the United States Constitution, any statute, Rule 410 of the Federal

18   Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

19   Procedure, or any other federal rule, that the statements or any

20   evidence derived from the statements should be suppressed or are

21   inadmissible.

22            COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

23                          OFFICE NOT PARTIES

24      33.  Defendant understands that the Court and the United States

25   Probation and Pretrial Services Office are not parties to this

26   agreement and need not accept any of the USAO's sentencing

27   recommendations or the parties' agreements to facts or sentencing

28   factors.

34.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 20 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

35.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

NO ADDITIONAL AGREEMENTS

36.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

37.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

/s/ Kathrynne N. Seiden                                11/20/2023
_____              _____
KATHRYNNE N. SEIDEN                                      Date
Assistant United States Attorney

_____              11/20/23
CHANCE BRANNON                           _____
Defendant                                               Date

_____              11/20/23
KATHERINE T. CORRIGAN                    _____
Attorney for Defendant                                  Date
CHANCE BRANNON

21

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        11/20/23
CHANCE BRANNON                          _____
Defendant                               Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am CHANCE BRANNON's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

11/20/23

KATHERINE P. CORRIGAN
Attorney for Defendant
CHANCE BRANNON

Date